IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VICKIE WESTON : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO. 13-6073 |
| CITY OF PHILADELPHIA, ET AL. : | |

SURRICK, J.                                                                                          MAY  6 , 2014

### MEMORANDUM

Presently before the Court is the Motion to Dismiss of Defendants Richard Ames, the City of Philadelphia, and Nefertiti Savoy (ECF No. 2), and the Motion to Dismiss of Intercultural Family Services, Inc. (ECF No. 11).  For the following reasons, Defendants' Motions will be granted.

### I.    BACKGROUND

#### A.    Procedural History

On October 17, 2013, Plaintiff Vickie Weston filed this lawsuit against Defendants Rick Ames Esquire ("Ames") (incorrectly identified as "Richard Ames, Esquire" in the Complaint), the City of Philadelphia (the "City"), Intercultural Family Services, Inc. ("IFS"), Thomas Purl, Esquire, Nefertiti Savoy ("Savoy"), Tara L. Wayt, Esquire, and Linda Ann Weston.  (Compl., ECF No. 1.)[1]  This lawsuit arises out of the placement of Plaintiff's daughter, Beatrice Weston, in the temporary legal custody of Plaintiff's sister, Linda Ann Weston.  Plaintiff brings claims under 42 U.S.C. § 1983, alleging that the actions of the City, Savoy, Ames, and IFS resulted in a

---

[1] Linda Ann Weston is included in the caption of the Complaint; however, Plaintiff does not bring any counts against her.  (Compl.)  On December 20, 2013, Defendants Purl and Wayt were dismissed with prejudice pursuant to an agreement reached among the parties.  (ECF No. 10.)

state-created danger to her daughter, and a state-created harm to Plaintiff. (Count I ¶ 63; Count II ¶ 69; Count III ¶ 73.) Plaintiff alleges that Defendants' actions deprived Plaintiff of her Fourteenth Amendment "parental rights" (Count I at ¶¶ 62, 65; Count II at ¶68; Count III at ¶ 72).[2] She also asserts negligence claims against Defendants. (Counts VII-IX.)

On November 5, 2013, the City, Ames, and Savoy filed this Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (City's Mot., ECF No. 2.) On December 18, 2013, Plaintiff filed a Response to the City's Motion. (Pl.'s Resp. to City's Mot., ECF No. 8.) On December 19, 2013, the City, Ames and Savoy filed a Reply in further support of their Motion. (ECF No. 9.) On December 27, 2013, IFS filed a Motion to Dismiss. (IFS' Mot., ECF No. 11.) On January 16, 2014, Plaintiff filed a Response. (Pl.'s Resp. to IFS' Mot., ECF No. 12.)

In her Responses, Plaintiff formally withdrew a number of the claims alleged in her Complaint. Specifically, Plaintiff withdrew her state-created danger claims against the City (Count I), Savoy (Count II), and Ames (Count III). (Pl's. Resp. to City's Mot. 8.) Plaintiff also withdrew her negligence claims against the City (Count VII), Savoy (Count VIII), and Ames (Count IX). (*Id*. at 10.) In addition, Plaintiff withdrew her state-created danger and state-created harm claims against IFS (Count IV). (Pl's. Resp. to IFS' Mot. 9.) Finally, Plaintiff withdrew her negligence claim against IFS (Count X) as well as her claim that IFS violated the Pennsylvania Child Protective Services Law. (*Id*.) Since these claims have been withdrawn, we need not address them.

---

[2] Plaintiff repeats Counts I, II, and III at ¶¶ 75-88 of the Complaint.

B.     **Factual History**[3]

Plaintiff is the mother of Beatrice Weston, who was born on December 9, 1991.  (Compl. ¶ 9.)  On August 16, 2002, a dependency hearing was held for Beatrice in the family court for Philadelphia County.  (*Id*. at ¶ 22.)  The hearing was the result of a dependency petition filed by the City of Philadelphia's Department of Human Services ("DHS").  (Aug. 16, 2002 Hr'g Tr. 5, City's Mot. Ex. B.)  DHS filed the dependency petition in response to an earlier request by the family court.  (*Id*.)

Plaintiff was present at the August 16, 2002 hearing as were Defendants Ames and Savoy.  (Compl. ¶¶ 10-12.)  At the time, Ames served as Assistant City Solicitor for the City of Philadelphia (*Id*. at ¶ 4), and Savoy was employed by the City as a social worker (*Id*. at ¶ 3).  Linda Ann Weston, Beatrice's aunt, was also present at the hearing.  (Aug. 16 Hr'g Tr. 4.)  During the course of the proceeding, Judge Dougherty told all present that he was looking to the family for some direction, and he actually talked with Plaintiff.  (*Id*. at 8.)  Savoy told the court that Linda Ann Weston wanted Beatrice to live with her.  (*Id*. at 7.)  Savoy further informed the court that Plaintiff was in agreement with this arrangement.  (*Id*. at 8.)  Plaintiff did not object.

---

[3] Generally, on a motion to dismiss, the district court may consider only the facts alleged in the complaint, documents that are attached, and matters that are incorporated by reference. *Siwulec v. J.M. Adjustment Servs., LLC*, 465 F. App'x 200, 202 (3d Cir. 2012).  In addition, the court may take into consideration "matters of public record" and "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  *Pension Benefit Guar. Corp. v. White Consol. Indus*., 998 F.2d 1192, 1196 (3d Cir. 1993); *see also Fed. Elec. Comm'n v. Arlen Specter '96*, 150 F. Supp. 2d 797, 803 n.5 (E.D. Pa. 2001) (noting that a court may consider "court files, records and letters of official actions or decisions of government agencies and administrative bodies when considering a Rule 12(b)(6) motion") (internal quotation marks omitted).
  Pursuant to Federal Rule of Civil Procedure 12(b)(6), "'we accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff.'"  *DelRio-Mocci v. Connolly Props., Inc*., 672 F.3d 241, 245 (3d Cir. 2012) (quoting *Warren Gen. Hosp. v. Amgen, Inc*., 643 F.3d 77, 83 (3d Cir. 2011)).

(*Id.*)  When the court inquired whether anyone had checked out Linda Ann Weston's home, Savoy responded in the negative.  (*Id.* at 9.)  Moreover, no one advised the court that Linda Ann Weston had a criminal conviction.  (*Id.*)  Neither Plaintiff, nor anyone else, told Judge Dougherty that in 1981 "Linda Ann Weston imprisoned, tortured, beat her sister's boyfriend with a hammer, and then starved him to death" for which she was ultimately convicted of third degree murder.  (Compl. ¶¶ 17, 18.)

At the conclusion of the hearing, the family court adjudicated Beatrice dependent, granted temporary legal custody to Linda Ann Weston, and ordered DHS supervision and Level II Services for Children in their Own Home ("SCOH").  (Aug. 16 Hr'g Tr. 10.)  Following the hearing, DHS contracted with IFS to provide SCOH services.  (Compl. ¶ 16.)  IFS also agreed to arrange appropriate behavior and health evaluations for Beatrice and to arrange for appropriate interventions as needed.  (*Id.* at ¶ 20.)

The family court conducted subsequent hearings on November 18, 2002 (*Id.* at ¶ 36), and April 17, 2003 (*Id.* at ¶ 40).  Plaintiff was present at these hearings.  (Nov. 18, 2002 Post-Adjudication Hr'g and Order 1, City's Mot. Ex. D; Apr. 17, 2003 Post-Adjudication Hr'g and Order 1, City's Mot. Ex. F.)  At the November 18th hearing, the family court continued Linda Ann Weston's temporary custody of Beatrice and decreased SCOH services to Level I.  (Compl. ¶ 36; Nov. 18 Post-Adjudication Hr'g and Order 3.)  At the April 17th hearing, the family court continued the temporary legal custody order and discharged the DHS dependency petition, DHS supervision, and SCOH.  (Compl. ¶¶ 39, 40; Apr. 17 Post-Adjudication Hr'g and Order 3.)

Plaintiff now alleges that Beatrice was imprisoned and abused by Linda Ann Weston until her rescue on October 17, 2011.  (Compl. ¶¶ 44, 51.)  Plaintiff acknowledges that during the years that her daughter was in the custody of her sister "word often filtered back" to her that

Beatrice was being abused. However, Plaintiff never brought this to the attention of the court. (Pl.'s Resp. to City's Mot. 7.)

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a), "a pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion under Rule 12(b)(6), therefore, tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Courts need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679. This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

In determining whether dismissal of the complaint is appropriate, courts use a two-part analysis. *Fowler*, 578 F.3d at 210. First, courts separate the factual and legal elements of the claim and accept all of the complaint's well-pleaded facts as true. *Id*. at 210–11. Next, courts

determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679).  Given the nature of the two-part analysis, "'[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

## III.    DISCUSSION

Plaintiff contends that Defendants demonstrated a deliberate indifference and a reckless disregard for Plaintiff's "well-being, privacy and parental rights" when they placed Beatrice in the custody of Linda Ann Weston.  (Compl. ¶¶ 62, 68, 72, 90.)  Specifically, the Complaint states that Defendants "failed to report Linda Ann Weston's criminal history, and failed to adequately perform the SCOH services."  (*Id*. at ¶ 41.)  In addition, the Complaint states that Defendants repeatedly "misrepresented to Plaintiff and to the custody court that home visits were conducted and that Beatrice [] was safe."  (*Id*. at ¶ 45.)  Plaintiff asserts that "her constitutional rights with regards to the raising of her child" were violated.  (*Id*. at ¶¶ 65, 93.)

Plaintiff argues that this lawsuit is based on her decade long separation from Beatrice and the violation of her constitutional right to make decisions concerning Beatrice's care, custody, and control.  (Pl.'s Resp. to City's Mot. 2-4; Pl.'s Resp. to IFS' Mot. 2-3.)  Specifically, Plaintiff contends that her separation from Beatrice resulted from misrepresentations, made by Defendants' at the August 16th dependency hearing, concerning Linda Ann Weston's fitness as a custodial guardian.  (Pl.'s Resp. to City's Mot. 7; Pl.'s Resp. to IFS' Mot. 8.)[4]  Furthermore,

---

[4] A review of the August 16, 2002 dependency hearing reveals that Defendants did not make any representations as to the fitness of Linda Ann Weston as custodial guardian.  When

Plaintiff asserts that during the time she was separated from Beatrice she received repeated assurances that Beatrice was "in a safe environment and doing well." (Pl.'s Resp. to City's Mot. 7; Pl.'s Resp. to IFS' Mot. 8.)

Defendants counter that Plaintiff was present at all of the family court proceedings and that she knew or should have known of her injury in 2002 or 2003 at the latest. Defendants argue that this lawsuit, which was filed over ten years later, is barred by the statute of limitations. (City's Mot. 7-8; IFS' Mot. 6-8.) In addition, Defendants Ames and Savoy argue that they are entitled to absolute and qualified immunity in preparing for, initiating, and prosecuting the dependency proceedings. (City's Mot. 8-11.)

To prevail in an action under section 1983, a plaintiff must demonstrate: (1) a violation of a right secured by the Constitution or laws of the United States, and (2) that the violation was committed by a person acting under color of state law. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000); *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993). The Third Circuit has noted that "in § 1983 cases grounded on alleged parental liberty interests, we are venturing into the murky area of unenumerated constitutional rights." *McCurdy v. Dodd*, 352 F.3d 820, 825 (3d Cir. 2003). Therefore, courts must "'identify the exact contours of the underlying right said to have been violated' and [] determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" *Nicini*, 212 F.3d at 806 (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)).

It is well settled that the Due Process Clause of the Fourteenth Amendment "protects certain narrowly defined fundamental rights of parents in their relationships with their children."

---

questioned by the court as to whether anyone had visited Linda Ann Weston's home, Defendant Savoy responded in the negative. (Aug. 16 Hr'g Tr. 9.)

*McCurdy*, 352 F.3d at 826.  In fact, "the interest of parents in the care, custody, and control of their children - is perhaps the oldest of the fundamental liberty interests recognized by [the Supreme] Court." *Troxel v. Granville*, 530 U.S. 57, 65 (2000).  This right has been extended, in limited circumstances, to include the interest of parents in "preserving the life and physical safety of [their] child[ren] from deprivations caused by state action . . . ." *Estate of Bailey v. York Cnty.*, 768 F.2d 503, 509 n.7 (3d Cir. 1985), *abrogated in part by DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989).  In similarly narrow circumstances, protection has been extended to the interest of parents in the companionship of their minor children.  *See Id.; McCurdy*, 352 F.3d at 829-30.

### A. Statute of Limitations

Plaintiff concedes that the "conduct giving rise to [her] injury began with the dependency hearing on August 16, 2002 when Plaintiff's daughter was given over in custody to Linda Ann Weston."  (Pl.'s Resp. to City's Mot. 7; Pl.'s Resp. to IFS' Mot. 8.)  Plaintiff argues, however, that she was unable to discover "what injury, if any, existed" until Beatrice was rescued on October 17, 2011.  (Pl.'s Resp. to City's Mot. 8; Pl.'s Resp. to IFS' Mot. 8.)  Plaintiff admits that she often received word that Beatrice was being abused, however, she was unable to verify the veracity of these reports until Beatrice's rescue in October of 2011.  (Pl.'s Resp. to City's Mot. 7-8; Pl.'s Resp. to IFS' Mot. 8-9.)  Plaintiff argues that the statute of limitations should be tolled until October 17, 2011, the date on which she finally confirmed Defendants misrepresentations about her daughter's safety.  (Pl.'s Resp. to City's Mot. 7-8; Pl.'s Resp. to IFS' Mot. 8-9.)

A court may dismiss an action on 12(b)(6) grounds if "the complaint shows facial noncompliance with the statute of limitations."  *Wolk v. Olson*, 730 F. Supp. 2d 376, 377 (E.D.

Pa. 2010) (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.1 (3d Cir. 1994). Claims "brought under section 1983 are subject to state statutes of limitations governing personal injury actions." *Garvin v. City of Phila.*, 354 F.3d 215, 220 (3d Cir. 2003) (citing *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)). In Pennsylvania, the statute of limitations for personal injury claims is two years. *Smith v. City of Pittsburg*, 764 F.2d 188, 194 (3d Cir. 1985) (citing 42 Pa. Cons. Stat. Ann. § 5524). Under federal law, which governs the accrual of section 1983 claims, "a cause of action accrues, and the statute of limitations begins to run, 'when the plaintiff knew or should have known of the injury upon which its action is based.'" *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (quoting *Sameric Corp. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998)).

State tolling principles generally govern claims arising under section 1983. *Id.* 589 F.3d at 639.[5] In Pennsylvania, the "discovery rule" tolls the statute of limitations in cases where the injured party, "despite the exercise of reasonable diligence, [is unable] to know that [s]he is injured and by what cause." *Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005). Pennsylvania's application of the discovery rule is narrow in scope and does not require the plaintiff to have "'notice of the full extent of the injury, the fact of actual negligence, or precise cause.'" *Gleason*

---

[5] "Where state tolling principles contradict federal law or policy, federal tolling principles may apply in certain limited circumstances." *Katch* 589 F.3d at 639. The Third Circuit has identified three circumstances where equitable tolling is appropriate:

> (1) where a defendant actively misleads a plaintiff with respect to her cause of action; (2) where the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum."

*Lake v. Arnold*, 232 F.3d 360, 370 n.9 (3d. Cir 2000). Equitable tolling is an extraordinary remedy that should only be extended sparingly. *Frasier-Kane v. City of Phila.*, 517 F. App'x 104, 106 (3d Cir. 2013). Plaintiff has failed to address in what ways, if any, Pennsylvania's tolling principles conflict with federal law or policy.

*v. Borough of Moosic*, 15 A.3d 479, 484 (Pa. 2001) (quoting *Wilson v. El-Daief*, 964 A.2d 354, 364 (Pa. 2009)). Rather, "the commencement of the limitations period is grounded on 'inquiry notice' that is tied to 'actual or constructive knowledge of at least some form of significant harm and of a factual cause linked to another's conduct . . . .'" *Id*. at 484 (quoting *Wilson*, 964 A.2d at 364). Thus, the limitations period will only be tolled where the plaintiff can demonstrate either that she had no reason to investigate, or that despite conducting an investigation she failed to discover her injury. *Knopick v. Connelly*, 639 F.3d 600, 612 (3d Cir. 2011). The question of whether a plaintiff has made a timely discovery of her injury is a matter for the jury unless "the undisputed facts lead unerringly to the conclusion that the time it took to discover an injury was unreasonable as a matter of law." *A. McD. v. Rosen*, 621 A.2d 128, 130 (Pa. Super. Ct. 1993).

In the instant case, Plaintiff was present at the August 16, 2002 dependency hearing and consented to Beatrice's placement with her sister Linda Ann Weston. Plaintiff was also present on November 18, 2002, when the family court continued Linda Ann Weston's temporary legal custody. Moreover, Plaintiff was in attendance on April 17, 2003, when the family court discharged DHS' dependency petition, terminated supervision, and once again continued its temporary legal custody order. Plaintiff knew, or should have known, of her injury as early as 2002 and as late as 2003. *See Crawford v. Wash. Cnty. Children & Youth Servs*., 353 F. App'x 726, 729 (3d Cir. 2009) (finding that the plaintiffs had the facts necessary to assert a section 1983 claim following the removal their child from their home and the subsequent termination of their parental rights); *see also Ormsby v. Luzerne Cnty. Dept. of Pub. Welfare Office*, 149 F. App'x 60, 62 (3d Cir. 2005) (finding that the plaintiff was aware of the alleged wrongdoing when "she received notice that her daughter had been ordered to remain in [her father's] custody"). Plaintiff knew from 2002 to 2011 that she was not enjoying the companionship of her

daughter and that she was being deprived her liberty interest in the physical safety of her daughter.

Clearly, Defendants' alleged misrepresentations about Beatrice's safety did not prevent Plaintiff from discovering that she had become separated from her daughter. Moreover, these misrepresentations did not prevent Plaintiff from learning that Beatrice's safety was in jeopardy while in the custody of Linda Ann Weston. Plaintiff admits that despite Defendants' misrepresentations about Beatrice's safety, she often received word that Beatrice was being abused. Moreover, Plaintiff acknowledges that Defendants' representations were "in clear contradiction of the fact that Plaintiff had great difficulty locating and reuniting with her daughter during this period." (Comp. ¶¶ 45-46.) Between 2002 and 2011, Plaintiff knew that she was being injured and she knew the cause. She took no action. This was unreasonable as a matter of law. *Rosen*, 621 A.2d at 130; *Mest v. Cabot Corp.*, 449 F.3d 502, 516 (3d Cir. 2006) ("Where common sense would lead the plaintiff to question a misrepresentation, the plaintiff cannot reasonably rely on that misrepresentation."). Although the Complaint alleges that Beatrice was prevented from initiating legal proceedings or investigating any claims during this time, it does not allege that Plaintiff was subject to such restrictions. (Compl. at ¶ 53.) We are satisfied that Plaintiff's claims are barred by the statute of limitations.

### B.  Fourteenth Amendment

"The Due Process Clause of the Fourteenth Amendment prohibits the government from interfering in familial relationships unless the government adheres to the requirements of procedural and substantive due process." *Croft v. Westmoreland Cnty. Children & Youth Servs.*, 103 F.3d 1123, 1125 (3d Cir. 1997). Plaintiff does not allege that Defendants violated her procedural due process rights. Rather, Plaintiff contends that Defendants violated her

substantive right to enjoy the companionship of her daughter and to make decisions concerning her daughter's care, custody, and control.

The protections of the Due Process Clause have in limited circumstances been extended to include a parent's liberty interest in the companionship, life, and physical safety of their children. However, the Third Circuit has held that this protection is narrow in scope, and only applies in cases where the state takes action that is deliberately directed at the relationship between parents and their minor children. *McCurdy*, 352 F.3d at 829. Thus, parents seeking to maintain a section 1983 action based upon injuries inflicted upon their children by the state must demonstrate: "(1) that the child is a minor, (2) that the unlawful conduct was directed toward the parent-child relationship, and (3) that the injury they suffered is the result of unlawful state action against their child." *Campbell v. Koslosky*, No. 06-3494, 2007 WL 707374, at *4 (E.D. Pa. Feb. 28 2007) (citing *Bailey*, 768 F.2d at 509 n.7; *McCurdy*, 352 F.3d 829-30).

The first two requirements have been established. Beatrice Weston was born on December 9, 1991. She was a minor during most of the time that she was in the custody of Linda Ann Weston, the time when Plaintiff was allegedly being deprived of her daughter's companionship, care, custody, and control. Moreover, Defendants' alleged unlawful conduct was directed toward the parent-child relationship because it concerned that very care, custody, and control. With regard to the third requirement, whether the injury suffered by Plaintiff was the result of unlawful state action against Beatrice, generally, a state has "no affirmative duty to protect citizens, not in state custody, from injuries caused by private parties . . . ." *Campbell*, 2007 WL 707374, at *4 (citing *DeShaney*, 489 U.S. at 201-202). There are two exceptions to this rule: the special relationship exception and the state-created danger exception. *Ye v. U.S.*, 484 F.3d 634, 637 (3d Cir. 2007). Since Plaintiff has withdrawn her state-created danger claims,

12

we need only address the question of whether a special relationship existed between Beatrice and Defendants.

The special relationship exception applies "'when the state enters into a special relationship with a particular citizen . . . [and] fails, under sufficiently culpable circumstances, to protect the health and safety of the citizen to whom it owes an affirmative duty.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 907 (3d Cir. 1997) (quoting *D.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1369 (3d Cir. 1992)). The Third Circuit has observed that "[t]he affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help [her], but from the limitation which it has imposed on [her] freedom to act on [her] own behalf." *Deshaney*, 489 U.S. at 200. The special relationship exception requires the existence of a custodial relationship. *Sanford v. Stiles*, 456 F.3d 298, 304 n.4 (3d. Cir. 2006) ("A deprivation of liberty through, for example, incarceration or institutionalization, is required.") (internal quotation marks omitted). The Third Circuit has held that foster children have a special relationship with the state because the state takes legal custody. *Nicini*, 212 F.3d at 808. Conversely, "where the state takes only temporary custody of a child, no special relationship exists." *Costobile-Fulginiti v. City of Phila.,* 719 F. Supp. 2d 521, 526 (3d Cir. 2010) (noting that there was no court order transferring custody of the child to DHS).

In the instant case, DHS filed a dependency petition at the request of the family court. The court then held a hearing at which it granted Linda Ann Weston temporary legal custody of Beatrice. Plaintiff does not allege, nor do the facts suggest, that the City or IFS ever had physical or legal custody of Beatrice. Therefore, the special relationship exception does not apply. *Bennett v. City of Phila.*, No. 03-5685, 2003 WL 23096884, at *6 (E.D. Pa. Dec. 18,

2003) (dismissing the plaintiff's special relationship claims because the facts did not allege physical custody by the government). The fact that Beatrice was under the supervision of DHS and IFS does not change this finding. *Estate of Kelly v. Multiethnic Behavioral Health, Inc.*, No. 08-3700, 2009 WL 2902350, at *10 n.9 (E.D. Pa. Sept. 9, 2009) (finding that the city's authority to make certain decisions on the child's behalf as part of her supervision fell "far short of the 'special relationship' required by *DeShaney*"). Since there was no special relationship between Defendants and Beatrice, Defendants owed no affirmative duty to protect Beatrice from Linda Ann Weston and Plaintiff's Fourteenth Amendment substantive due process claim must fail.

## IV. CONCLUSION

For the foregoing reasons, the Motions to Dismiss of Defendants Richard Ames, the City of Philadelphia, Nefertiti Savoy, and Intercultural Family Services, Inc., will be granted.

An appropriate Order follows.

**BY THE COURT:**

_____
**R. BARCLAY SURRICK, J.**